UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHELLEY HORTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>RICK MARTIN, an individual; CHRIS SMITH, an individual; and STATE OF NEVADA ex rel., its DIVISION OF EMERGENCY MANAGEMENT,<br><br>　　　　　　　　　　Defendants. | Case No. 3:14-cv-00248-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

Plaintiff Shelley Horton was employed with the State of Nevada for about eighteen years, the last seven of which were with the Department of Public Safety's Division of Emergency Management ("DEM"). Plaintiff asserts claims arising from her employment while she worked for DEM. Before the Court is Plaintiff's motion for partial summary judgment ("Plaintiff's Motion") (dkt. no. 70) and Defendants' motion for summary judgment ("Defendant's Motion") (dkt. no. 71). The Court has reviewed the parties' responses and replies. (Dkt. nos. 72, 76, 77, 78, 80.) For the reasons discussed below, Plaintiff's Motion is denied and Defendants' Motion is granted in part and denied in part as moot.

**II.   BACKGROUND**

　　**A.   Factual Background**

Plaintiff began her employment with the State of Nevada around 1995. (Dkt. no. 71-3 at 5.) In 2007, she transferred to work for DEM where she initially worked as the

program officer and later assumed responsibilities for the Emergency Management Performance Grant. ("EMPG") (*Id.* at 6-7.) Frank Siracusa was the Chief of DEM and Kamala Carmazzi, who later changed her name to Kamala Kuhn, was the Deputy Chief. (*Id. at 93*; dkt. no. 71 at 4.) About a year later, Plaintiff was designated as the "Tribal Liaison" and assumed responsibility for being the main point of contact for the 27 Tribal Nations within the State in DEM's efforts to help the Tribes with their grant applications and emergency preparedness. (Dkt. no. 71-3 at 14, 94-95.)

In early 2010, Rick Martin replaced Plaintiff's prior supervisor, Elaine Fischer, as the Emergency Management Program Manager. (*Id.* at 137.) Plaintiff then worked under the supervision of Martin for the grants administration portion of her job and under Kuhn, who was Martin's supervisor, for the Tribal Liaison aspect of her job. (*Id.* at 140-41.) The plan was for Martin to supervise Plaintiff on the Tribal Liaison part of her job after Kuhn's retirement in December 2010. (*Id.*) Kuhn retired on December 14, 2010, but continued to work on DEM projects. (*Id* at 192, 196-97.) Siracusa retired in January 2011. (Dkt. no. 72 at 5; dkt no. 71-3 at 107.) Chris Smith replaced him as Chief in October 2011. (Dkt. no. 78-1 at 3-4.)

Plaintiff alleges Kuhn, Smith and Martin conspired to render her work environment hostile. (Dkt. no. 1-1 at 6-7.) On December 11, 2013, Plaintiff medically retired from her employment with DEM. (*Id.*)

**B.  Procedural History**

Plaintiff initiated this action in state court on April 11, 2011. (Dkt. no. 1; dkt. no. 1-5.) On April 9, 2014, in response to a motion for judgment on the pleadings, the state court dismissed all claims except for the claim of First Amendment retaliation against Kuhn and Siracusa ("April 9, 2014, Order"). (Dkt. no. 1-4.) The court specifically dismissed the negligent supervision and retention claim based on DEM's alleged failure to retain and supervise Kuhn and Siracusa. (*Id.* at 8-9.) The Court directed judgment to be entered in favor of Defendants Glade Myer, Kuhn, Siracusa and DEM. (*Id.* at 9.)

///

In an order filed a day earlier, on April 8, 2014, the state court addressed Plaintiff's motion to file a Supplemental Complaint. (Dkt. no. 1-5 at 2.) Plaintiff sought to add new allegations and new defendants — Defendants Martin and Smith — based on events that transpired since her commencement of the action in April 2011, and to add a new claim for tortious discharge.[1] (*Id.* at 3.) The court granted Plaintiff's motion "insofar as it is not inconsistent with the [April 9, 2014] Order Granting and Denying in Part Motion for Judgment on the Pleadings." (*Id.* at 4.)

On April 11, 2014, Plaintiff filed a Supplemental Complaint. (Dkt. no. 1-1 at 4-9.) Defendants Smith, Martin and DEM then removed the action. (Dkt. no. 1 at 2.) Pursuant to the parties' stipulation, the Court dismissed Defendants Kuhn and Siracusa. (Dkt. no. 41.)

The Supplemental Complaint is the operative complaint since the Court denied Plaintiff's motion to amend.[2] (Dkt. no. 81.) The remaining Defendants named in the Supplemental Complaint are Smith, Martin and DEM. (Dkt. no. 1-1 at 4-9.)

## III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] Plaintiff alleges she took medical retirement on December 11, 2013, as a result of work-related stress caused by alleged hostile work environment. (Dkt. no. 1-5 at 3.)

[2] The Supplemental Complaint alleges a third claim for tortious discharge. (Dkt. no. 1-2 at 8.) Defendants represented that Plaintiff sought a stipulation to dismiss this claim. (Dkt. no. 78 at 2 n. 1.)

242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on the second claim for relief asserted in the Supplemental Complaint against DEM for negligent supervision and retention of Martin and Smith. (Dkt. no. 70.) Defendants argue that this claim was properly dismissed, and the claim as alleged in the Supplemental Complaint involves alleged actions of Kuhn and Siracusa, not Martin and Smith. (Dkt. no. 71 at 24; dkt. no. 72 at 2, 8.) The Court agrees.

///

In the April 9, 2014, Order, the state court dismissed the negligent supervision and retention claim based on DEM's alleged failure to retain and supervise Kuhn and Siracusa, and directed judgment in favor of these three Defendants (Kuhn, Siracusa and DEM). (Dkt. no. 1-4 at 8-9.) The court reasoned that Kuhn was no longer an employee of the State during the times alleged in the complaint, and DEM could not be held liable for negligent supervision of her. (*Id.* at 9.) The court found that Siracusa, as head of DEM, was the employer for purposes of the negligent supervision claim and the State could not be held liable for failing to supervise Siracusa. (*Id.*) While the court granted Plaintiff's motion to amend to add events that occurred after the filing of the complaint and to add Defendants Martin and Smith, amendment was granted "insofar as it is not inconsistent with the [April 9, 2014] Order." (Dkt. no. 1-5 at 4.) The Court therefore agrees with Defendants that the negligent supervision claim was dismissed pursuant to the April 9, 2014, Order.

Even assuming that Plaintiff was granted leave to amend the negligent supervision claim, the claim as alleged in the Supplemental Complaint is that the State negligently supervised Myler, Kuhn and Siracusa. (Dkt. no. 1-2 at 8.) Plaintiff is trying to amend her allegations to replace these individuals with Smith and Martin. The Court agrees with Defendants that Plaintiff's attempt to amend her claim at this late stage of the proceedings is improper.

The Court will therefore deny Plaintiff's Motion.

**B.   Defendants' Motion for Summary Judgment**

Because the Court finds that the negligent supervision claim has been dismissed, the Court will deny Defendants' Motion as moot with respect to this claim.

Defendants seek summary judgment on the First Amendment retaliation claim against Martin and Smith individually under 42 U.S.C. § 1983.[3] "The First Amendment

---

[3] Of the four individual Defendants identified in paragraphs 4 through 8 of the Supplemental Complaint (dkt. no. 1-2 at 5), only Defendants Martin and Smith remain in this action.

shields public employees from employment retaliation for their protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). A First Amendment retaliation claim involves a series of five questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers v. City of San Bernardino*, 572 F.3d 703, 708-09 (9th Cir. 2009) (quoting *Eng*, 552 F.3d at 1070). All five factors are necessary — "failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc), *cert. denied sub nom. City of Burbank v. Dahlia*, 134 S. Ct. 1283 (2014). A plaintiff must satisfy the first three steps of the five-step test. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)). If the plaintiff succeeds, then the burden shifts to the government to establish the fourth and fifth steps. *Id.* (citing *Robinson*, 566 F.3d at 822).

Defendants argue that Plaintiff cannot satisfy the five-factors test. Because Plaintiff cannot show that Martin and Smith were aware of her speech and Plaintiff's speech did not originate with them, the Court finds that Plaintiff cannot establish the third prong. (Dkt. no 71 at 17-18.) The Court will address the parties' arguments with respect to the third factor.

In her opposition to Defendants' Motion, Plaintiff identified the following as "speech [that] is of public concern: (1) "Plaintiff protested Kuhn's derogatory comments;" (2) "Plaintiff advised Myler of the delay in the MOU as ordered by Kuhn;" (3) Plaintiff followed Myler's advise and reported to the Director (Perry); and (4) Plaintiff reported to Perry that Siracusa allowed Kuhn to continue to act as the Deputy Director after her retirement. (Dkt. no. 76 at 3.) Assuming without deciding that these matters about which Plaintiff spoke satisfy the first two factors, Plaintiff fails to show that her speech was a substantial or motivating factor in the adverse employment actions taken.

Determining whether Plaintiff's speech was a "substantial or motivating factor in the adverse employment action" is a factual inquiry. *Eng*, 552 F.3d at 1071 (citation and internal quotation marks omitted). However, here, it is undisputed that neither Martin nor Smith was the subject of Plaintiff's speech, nor did they have any involvement in Plaintiff speaking out. Instead, Plaintiff's speech involved complaints about either Kuhn or Siracusa, who was Smith's predecessor.

Defendants argue that Martin and Smith were not aware of the content of Plaintiff's report to the Director and therefore could not have taken action to retaliate against Plaintiff for her speech.[4] (Dkt. no. 71 at 17-18.) Plaintiff counters that Martin was aware that she had complained to the Director and an inference could be drawn that he knew about the subject matter of her complaint. (Dkt. no 76 7-8.) But being aware of Plaintiff's complaint is not the same as knowing the subject of the complaint.

While all reasonable inferences must be drawn in Plaintiff's favor as the non-moving party, a rational trier of fact could not infer that Martin knew about the content of Plaintiff's alleged protected speech to the Director. The speech at issue is Plaintiff's report to the Director made in January 2011 that Siracusa permitted Kuhn to act as the deputy chief of DEM even after her retirement.[5] (Dkt. no. 76 at 3; dkt. no. 76-3 at 5-7; dkt. no. 71-3 at 207, 211-12.) Plaintiff asserts, without citation to any evidence, that "Martin called Plaintiff into his office with a witness upon learning she had gone to the Director."[6] (Dkt. no. 76 at 7.) Such unsupported assertion by counsel is not sufficient to

---

[4]Defendants cite to Martin's deposition testimony to argue that he was not aware of the content of Plaintiff's report to the Director. (Dkt. no. 71 at 17-18.) They suggest that Smith was not aware, either, but they offer no direct evidence to support this assertion. Plaintiff's report to the Director was made in January 2011, and Smith did not become the Chief of DEM until October 2011 (dkt. no. 78-1 at 3-4). Importantly, Plaintiff does not dispute that Smith was not aware of Plaintiff's report to the Director. Accordingly, the Court finds that Defendants have met their burden of production in seeking summary judgment.

[5]Plaintiff does not argue that Martin or Smith even knew that she had spoken about the other three matters that she identified as protected speech. (Dkt. no. 76 at 7-8.)

[6]In Defendants' opposition to Plaintiff's Motion, they assert that Martin decided to meet with Plaintiff to address her "breach of the chain of command in a more formal *(fn. cont…)*

1    create a material issue of fact. *See Bhan*, 929 F.2d at 1409. Plaintiff cites to Martin's
2    testimony that he heard a rumor that Plaintiff had filed a complaint with the Director,
3    which may have some connection to Siracusa's sudden retirement. (Dkt. no. 76-5 at 5.)
4    Plaintiff argues that an inference could be drawn from this testimony that Martin knew
5    the content of her speech to the Director about Siracusa's retention of Kuhn. (Dkt. no. 76
6    at 8.) That Martin knew Plaintiff had reported to the Director does not show he knew the
7    content of Plaintiff's speech such that he would be motivated to take adverse
8    employment actions against her because of her speech. Nor is it enough to draw a
9    reasonable inference that Martin knew the content of her speech. It is undisputed that
10   Plaintiff made other complaints about workplace issues outside of the chain of command
11   that was a source of friction between Plaintiff and Martin.[7] Indeed, even accepting
12   Plaintiff's claim that Martin took adverse employment actions against her for
13   circumventing the chain of command, such evidence shows that Plaintiff's act of going
14   around Martin was a motivating factor in the adverse employment actions; it does not
15   show that Plaintiff's protected speech to the Director was a substantial or motivating
16   factor in the adverse employment actions.

17   Plaintiff suggests that her arguments relating to Martin apply to Smith, even
18   though she does not even claim that Smith was aware of her January 2011 report to the
19   Director. (Dkt. no. 76 at 8.) As with Martin, Plaintiff cannot show her speech was a
20   substantial or motivating factor in any claimed adverse employment actions taken by
21   Smith.

22   ///

---

*(…fn. cont.)*
setting" after he heard that Plaintiff had taken her concerns to the Director because he had recently cautioned Plaintiff about following the chain of command. (Dkt. no. 72 at 5.) To the extent Plaintiff is referring to this meeting, this evidence does not show, nor could it be inferred, that Martin knew about the content of Plaintiff's speech or that her speech, not her act in going around him, was a substantial or motivating factor in the alleged adverse employment actions taken.

[7]In fact, Plaintiff contends that Martin, without any support in DEM's policy or practice, required that he be kept in the loop and Martin exhibited animus towards her for going around him instead of following the chain of command. (Dkt. no. 76 at 8.)

8

In sum, the undisputed evidence does not show that Plaintiff's speech was a substantial or motivating factor for the adverse actions that Martin or Smith may have taken. Plaintiffs cannot satisfy the third prong of the five-step test. Accordingly, the Court will grant Defendant's Motion with respect to Plaintiff's First Amendment retaliation claim. *Ellins*, 710 F.3d at 1056.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' Motions.

It is therefore ordered that Plaintiff's motion for partial summary judgment (dkt. no. 70) is denied.

It is further ordered that Defendants' motion for summary judgment (dkt. no. 71) is granted with respect to the First Amendment retaliation claim and is denied as moot with respect to the negligent supervision claim.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

DATED THIS 29th day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDG